FELIX T. WOO (CA SBN 208107)
fwoo@ftwlawgroup.com
FTW LAW GROUP
601 South Figueroa Street, Suite 1950
Los Angeles, California 90017
Telephone: (213) 335-3960
Facsimile: (213) 344-4498

Attorney for Plaintiff
SHANGHAI XUANNI TECHNOLOGY CO., LTD.

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| SHANGHAI XUANNI TECHNOLOGY CO., LTD., a Chinese company,<br><br>　　　　　Plaintiff,<br><br>　　vs.<br><br>CITY POCKET LOS ANGELES, INC, a California corporation, MORAD MATIAN, a/k/a MORAD MATYAN, an individual, NER PRECIOUS METALS INC., a California corporation, PEDRAM SHAMEKH, an individual, B&F FEDELINI INC., a California corporation, and FARHAD SADIAN, a/k/a FRED SADIAN, an individual,<br><br>　　　　　Defendants. | Case No. 2:20-cv-07467<br><br>**COMPLAINT FOR DAMAGES AND JURY DEMAND** |

Plaintiff Shanghai Xuanni Technology Co., Ltd. ("SXT") alleges for its Complaint against defendants City Pocket Los Angeles, Inc. ("City Pocket"), its owner or principal Morad Matian, a/k/a Morad Matyan, a/k/a Morad Madian ("Matian"); NER Precious Metals Inc., ("NER") and its owner or principal, Pedram Shamekh ("Shamekh"); B&F Fedelini Inc. ("B&F), and its owner or principal Farhad Sadian, a/k/a Fred Sadian ("Sadian"), as follows:

## PARTIES

1. Plaintiff SXT is a Chinese company organized under the laws of the People's Republic of China, with its principal place of business in the City of Shanghai, China.

2. Defendant City Pocket is a California corporation with its principal place of business in the City of Los Angeles, California.

3. Defendant Matian is an individual who plaintiff is informed and believes resides in Los Angeles County.

4. Defendant NER Precious Metals Inc. is a California corporation with its principal place of business in the City of Los Angeles, California.

5. Defendant Shamekh is an individual who plaintiff is informed and believes resides in Los Angeles County.

6. Defendant B&F Fedelini Inc. is a California corporation with its principal place of business in the City of Los Angeles, California.

7. Defendant Sadian is an individual who plaintiff is informed and believes resides in Los Angeles County.

## JURISDICTION AND VENUE

8. Jurisdiction is proper here under 28 USC section 1332 as between SXT and each of the defendants because there is complete diversity between SXT, as a Chinese company with its principal place of business in China, and the defendants, each a resident or citizen of Los Angeles County. SXT alleges far more than the jurisdictional minimum amount in controversy of $75,000 against each defendant.

9. Venue is proper under 28 USC section 1391(b) because each defendant lives or operates within this County.

## FACTUAL BACKGROUND

10. Plaintiff SXT is a Chinese trading company. In July 2019, the three companies sued in this action, City Pocket, NER and B&F sent SXT purchase orders requesting to buy knitted fabrics. Although each company ordered different amounts of goods and had different owners/principals who communicated with SXT, from SXT's perspective, the three companies knew each other and had some affiliation, although the full extent of that connection was not clear.

11. Based on the receipt of each companies' written purchase orders, SXT in return issued each company a proforma invoice which estimated the amount of goods that would be shipped and the price.

12. SXT also requested each of the companies' owners to send corporate information about their respective entities' history to satisfy SXT that they were legitimate businesses and could be trusted. Each of the companies' owners/principals named personally here responded and provided information on their respective companies and vouched for their legitimacy. Separately, each of the owners/principals named in this lawsuit are also identified on their respective companies' Statement of Information on file with the California Secretary of State's office as each company's Chief Executive Officer, among other officer titles.

13. Each company was required to pay a small deposit so that SXT would ship the goods.

14. Goods were shipped, as ordered, to each of the three companies, and each of them received the goods in the Fall of 2019. Each company signed inspection certificates regarding its receipt of the goods, and aside from City Pocket, no material objections were made as to the goods themselves or anything else with the orders that would excuse the companies' obligation to pay for the goods. As for City Pocket's few issues out of the many containers it received, the

company resolved those matters without any further indication by City Pocket that it would not pay for the goods it received.

15. The three companies failed to pay the remaining sums due on their orders.

16. City Pocket was shipped goods and received invoices for those items totaling $1,049,764.44 and paid a deposit of approximately 15% of $159,088.50, leaving an unpaid balance of $890,675.94 due and owing since December 2019.

17. NER was shipped goods and received invoices for those items totaling $1,170,775.37 and paid a deposit of less than 10% of $116,982.55, leaving an unpaid balance of $1,053,792.82 due and owing since November 2019.

18. B&F was shipped goods and received invoices for those items totaling $229,439.79 and paid a deposit of approximately 20% of $45,963.40, leaving an unpaid balance of $183,979.07 due and owing since November 2019.

19. Beginning soon after the goods were received and invoices had been issued, SXT followed up with each company to ask about the payment arrangements for the goods. Each company's principals either ignored these emails or after weeks of delays would send emails making vague excuses for their non-payment, in in some instances claiming the goods needed to be re-sold to customers (and that those customers were on 60 to 90 day payment terms) and promising to pay SXT when those downstream customers who bought the goods from them had paid. The companies and their principals would then continue to ignore SXT until SXT had to reach out again after weeks or a month. Not once did these companies or the owners, who were the parties who bought the goods and owed the money, ever reach out to SXT on their own to provide updates on the payments.

20. Naïve as it was, SXT continued to believe the representations that Messrs. Matian, Shamekh and Sadian were feeding them. In some instances, such as Mr. Shamekh, the current COVID-19 situation was used as an excuse, with assertions that the company had to shut down and therefore Mr. Shamekh could not

provide any updates until he returned to work (which is absurd). In the case of Mr. Matian, he falsely asserted to SXT that he could not demand payment from his customers during the pandemic because of government restrictions, which was also false.

21. To date, none of the balances have been paid, and inquiries made by SXT and its counsel have been ignored, with emails and letters received but with no response, and voice calls being allowed to go to voicemail or being sent directly to voicemail. In some instances, for example, with Mr. Matian, he answered the call and claimed not to be Mr. Matian and asked to take a message, but then no return call was made, and subsequent calls were sent directly to voicemail. In the case of Mr. Shamekh, calls were allowed to roll over to voicemail and then a caller from the same number would call back and not say anything or would hang up after counsel had announced his name upon picking up. None of the companies or their owners have contacted SXT to explain why they have not paid or when any payments would be made. This lawsuit therefore became necessary.

22. SXT is informed and believes and based thereon alleges that the companies very likely set up a scam to acquire the goods worth nearly two and a half million dollars from SXT, paid a pittance in deposits, and upon receipt of the goods, used or sold them as they saw fit without any intention to pay for the balance. The companies and their owners assumed that a Chinese company with salespersons unfamiliar with U.S. businesses and our legal system would have no recourse against them.

23. There are many discrepancies and issues that have come to light since and during SXT's failed attempts to contact and communicate with the three companies. For example, when preparing freight forwarding documents for receiving and delivery SXT's shipments from China (which arrived by boat), B&F listed its phone number as 424-283-1756. That is the same phone number listed by Mr. Shamekh for NER. (Today, dialing that number reveals it may have been a

- 4 -

Google voice account that has been shut down). Thus, while representing they are two separate companies, the two used the same phone number but never disclosed that connection to SXT.

24. Both Mr. Matian for City Pocket and Mr. Shamekh for NER sent SXT the same email on December 20, 2019 stating in basically identical language that due to the holiday season, their offices would be closed from December 20, 2019 to January 5, 2020, returning January 6, 2020, and that they would make payments by January 10, 2020. The language could not have been written the same coincidentally. There must have been some connection or coordination between the two men. Of course, neither company made such payments nor did they follow up with SXT after buying themselves a break over the holiday to enjoy the fruits of their multi-million dollar scam.

25. This is not the first time Mr. Shamekh has conducted such a scheme. Just this year, he was found liable for fraud and similar conduct in the Southern District of New York, in *Alishaev Brothers, Inc. v. LA Girl Jewelry, Inc*., Case No. 17-cv-7505 (JGK). The court dockets in the LA Superior Court are also filled with collection, breach of contract and other matters against Mr. Shamekh alleging his dishonesty in business matters.

26. The evidence and circumstances alleged here are not simply a generic breach of contract or common counts claim where a buyer simply fails to pay for goods. The purchasers here, through their principals, ordered goods, received them, and then strung along the seller for months offering bogus excuses for their nonpayment. It is apparent there was never any intention to pay for the goods at all. Such conduct is actionable under California law as a false promise.

**FIRST CLAIM FOR RELIEF**

**(Breach of Contract – Against City Pocket)**

27. Plaintiff realleges each allegation set forth above and incorporates them here by this reference.

28. SXT and City Pocket entered into a contractual relationship whereby SXT agreed to sell, and City Pocket agreed to buy, goods. This agreement is memorialized by purchase orders, draft "proforma invoices" and the final invoices that SXT sent to City Pocket. SXT performed all of the material terms of this agreement, shipped the goods and sent City Pocket invoices for the sums due totaling $890,675.94.

29. City Pocket has failed to pay $890,675.94 of the sums due to SXT, which is a breach of the parties' agreement, and such failure to pay has caused SXT damages in that sum.

30. SXT is entitled to prejudgment interest on the unpaid sum due under California law according to proof.

## SECOND CLAIM FOR RELIEF
### (Breach of Contract – Against NER)

31. Plaintiff realleges each allegation set forth above and incorporates them here by this reference.

32. SXT and NER entered into a contractual relationship whereby SXT agreed to sell, and City Pocket agreed to buy, goods. This agreement is memorialized by purchase orders, draft "proforma invoices" and the final invoices that SXT sent to NER. SXT performed all of the material terms of this agreement, shipped the goods and sent NER invoices for the sums due totaling $1,053,792.82.

33. NER has failed to pay $1,053,792.82 of the sums due to SXT, which is a breach of the parties' agreement, and such failure to pay has caused SXT damages in that sum.

34. SXT is entitled to prejudgment interest on the unpaid sum due under California law according to proof.

## THIRD CLAIM FOR RELIEF

### (Breach of Contract – Against B&F)

35. Plaintiff realleges each allegation set forth above and incorporates them here by this reference.

36. SXT and B&F entered into a contractual relationship whereby SXT agreed to sell, and B&F agreed to buy, goods. This agreement is memorialized by purchase orders, draft "proforma invoices" and the final invoices that SXT sent to B&F. SXT performed all of the material terms of this agreement, shipped the goods and sent City Pocket invoices for the sums due totaling $183,979.07.

37. B&F has failed to pay $183,979.07 of the sums due to SXT, which is a breach of the parties' agreement, and such failure to pay has caused SXT damages in that sum.

38. SXT is entitled to prejudgment interest on the unpaid sum due under California law according to proof.

## FOURTH CLAIM FOR RELIEF

### (Common Counts – Account Stated/Open Book Account
### – Against City Pocket)

39. Plaintiff realleges each allegation set forth above and incorporates them here by this reference.

40. SXT alleges that, within the last four years, City Pocket became indebted to it on an open book account for money due in the sum of $890,675.94.

41. SXT alleges that, within the last four years, City Pocket has acknowledged that an account stated exists in the form of invoices that SXT has sent to City Pocket, and that City Pocket agreed that it was indebted to SXT in the sum of $890,675.94.

42. This open book account, and account stated, are for goods and merchandise that SXT sold to City Pocket for which City Pocket promised to pay SXT.

43. $890,675.94 is the agreed upon and reasonable value of the goods and merchandise sold, and SXT is entitled to prejudgment interest according to proof.

## FIFTH CLAIM FOR RELIEF

### (Common Counts – Account Stated/Open Book Account
### -- Against NER)

44. Plaintiff realleges each allegation set forth above and incorporates them here by this reference.

45. SXT alleges that, within the last four years, NER became indebted to it on an open book account for money due in the sum of $1,053,792.82.

46. SXT alleges that, within the last four years, NER has acknowledged that an account stated exists in the form of invoices that SXT has sent to NER, and that NER agreed that it was indebted to SXT in the sum of $1,053,792.82.

47. This open book account, and account stated, are for goods and merchandise that SXT sold to NER for which NER promised to pay SXT.

48. $1,053,792.82 is the agreed upon and reasonable value of the goods and merchandise sold, and SXT is entitled to prejudgment interest according to proof

## SIXTH CLAIM FOR RELIEF

### (Common Counts – Account Stated/Open Book Account
### -- Against B&F)

49. Plaintiff realleges each allegation set forth above and incorporates them here by this reference.

50. SXT alleges that, within the last four years, B&F became indebted to it on an open book account for money due in the sum of $183,979.07.

51. SXT alleges that, within the last four years, B&F has acknowledged that an account stated exists in the form of invoices that SXT has sent to B&F, and that B&F agreed that it was indebted to SXT in the sum of $183,979.07.

52. This open book account, and account stated, are for goods and merchandise that SXT sold to B&F for which City Pocket promised to pay SXT.

53. $183,979.07 is the agreed upon and reasonable value of the goods and merchandise sold, and SXT is entitled to prejudgment interest according to proof

## SEVENTH CLAIM FOR RELIEF

**(False Promise/Fraud – Against City Pocket and Matian)**

54. Plaintiff realleges each allegation set forth above and incorporates them here by this reference.

55. Matian, as the owner and principal of City Pocket, made false promises to SXT by conducting a fraudulent scheme to order goods by issuing purchase orders, and upon receipt of the goods, using or disposing of the goods as he saw fit without any regard for City Pocket's obligations to SXT. He falsely promised when ordering the goods that he would pay for them, and after receiving the goods, falsely promised and assured SXT without any intention of performing that he would pay the invoices due. Matian's representations that he ran a legitimate company, that he intended to pay for the goods he ordered, and when pressed for details and status updates on the payments, that he would make such payments, were false and designed to induce SXT to agree to sell and ship the goods to City Pocket, and, at least initially, for SXT to forbear from seeking collection of its debts through legal channels. Matian's representations that he would be making payments shortly in the future (which always turned out to be false when no updates or payments were forthcoming), that he was still in the process of collecting payments from his customers in order to pay SXT, and that he was barred by governmental regulations from collecting debts from his customers during the COVID-19 situation, were false, and are further evidence that his initial promises to pay for the goods were also false.

56. SXT relied on Matian's promises and assurances, first to accept his orders for the goods and to ship them, and later, that he would pay for such goods.

57. Had SXT known the truth of Matian's intentions, likely collectively with Shamekh and Sadian through their respective companies, it would not have sold the goods to City Pocket or believed Matian's assertions that he was a legitimate businessman running a real company.

58. Had SXT known of the truth of Matian's false assurances and promises, it would have avoided the loss of $890,675.94, which is the sum due and owing on the unpaid invoices.

59. Matian is equally liable for the false promises and misrepresentations alleged here because he is the one who made them to SXT.

## EIGHTH CLAIM FOR RELIEF

### (False Promise/Fraud – Against NER and Shamekh)

60. Plaintiff realleges each allegation set forth above and incorporates them here by this reference.

61. Shamekh, as the owner and principal of NER, made false promises to SXT by conducting a fraudulent scheme to order goods by issuing purchase orders, and upon receipt of the goods, using or disposing of the goods as he saw fit without any regard for NER's obligations to SXT. He falsely promised when ordering the goods that he would pay for them, and after receiving the goods, falsely promised and assured SXT in emails and in telephone calls that he would make the payments without any intention of performing those promises. Shamekh, like Matian, also made excuses using the COVID-19 situation to claim that he could not collect payments to then in turn pay SXT for the goods he already received and used.

62. SXT relied on Shamekh's promises and assurances, first to accept his orders for the goods and to ship them, and later, that he would pay for such goods.

63. Had SXT known the truth of Shamekh's intentions, likely collectively with Matian and Sadian through their respective companies, it would not have sold the goods to NER or believed Shamekh's assertions that he was a legitimate businessman running a real company.

64. Had SXT known of the truth of Shamekh's false assurances and promises, it would have avoided the loss of $1,053,792.82, which is the sum due and owing on the unpaid invoices.

65. Shamekh is equally liable for the false promises and misrepresentations alleged here because he is the one who made them to SXT.

## NINTH CLAIM FOR RELIEF

### (False Promise/Fraud – Against B&F and Sadian)

66. Plaintiff realleges each allegation set forth above and incorporates them here by this reference.

67. Sadian, as the owner and principal of B&F, made false promises to SXT by conducting a fraudulent scheme to order goods by issuing purchase orders, and upon receipt of the goods, using or disposing of the goods as he saw fit without any regard for B&F's obligations to SXT. He falsely promised when ordering the goods that he would pay for them, and after receiving the goods, falsely promised and assured SXT without any intention of performing that he would pay the invoices due.

68. SXT relied on Sadian's promises and assurances, first to accept his orders for the goods and to ship them, and later, that he would pay for such goods.

69. Had SXT known the truth of Sadian's intentions, likely collectively with Shamekh and Sadian through their respective companies, it would not have sold the goods to B&F or believed Sadian's assertions that he was a legitimate businessman running a real company.

70. Had SXT known of the truth of Sadian's false assurances and promises, it would have avoided the loss of $183,979.07, which is the sum due and owing on the unpaid invoices.

71. Sadian is equally liable for the false promises and misrepresentations alleged here because he is the one who made them to SXT.

## PRAYER FOR RELIEF

WHEREFORE, Cross-Complainants pray for judgment as follows:

1. For damages of $890,675.94 against City Pocket and Matian on the claims for relief alleged against them; for damages of $1,053,792.82 against NER and Shamekh on the claims for relief alleged against them; for damages of $183,979.07 against B&F and Sadian for the claims for relief alleged against them.

2. For pre-judgment interest according to proof;

3. For attorneys' fees and costs of suit as permitted by law and according to proof; and

4. For such other and further relief as the Court deems just and proper.

Dated: August 18, 2020                    FTW LAW GROUP

By: _____
FELIX T. WOO
Attorney for Plaintiff
SHANGHAI XUANNI
TECHNOLOGY CO., LTD.

## JURY DEMAND

Plaintiff Shanghai Xuanni Technology Co., Ltd. demands a trial by jury on all triable issues.

Dated: August 18, 2020                    FTW LAW GROUP

By: _____
FELIX T. WOO
Attorney for Plaintiff
SHANGHAI XUANNI
TECHNOLOGY CO., LTD.

- 12 -