FELIX T. WOO (CA SBN 208107)
fwoo@ftwlawgroup.com
FTW LAW GROUP
601 South Figueroa Street, Suite 1950
Los Angeles, California 90017
Telephone: (213) 335-3960
Facsimile: (213) 344-4498

Attorney for Plaintiff
SHANGHAI XUANNI TECHNOLOGY CO., LTD.

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| SHANGHAI XUANNI TECHNOLOGY CO., LTD., a Chinese company,<br><br>Plaintiff,<br><br>vs.<br><br>CITY POCKET LOS ANGELES, INC, a California corporation, MORAD MATIAN, a/k/a MORAD MATYAN, an individual, NER PRECIOUS METALS INC., a California corporation, PEDRAM SHAMEKH, an individual, B&F FEDELINI INC., a California corporation, and FARHAD SADIAN, a/k/a FRED SADIAN, an individual,<br><br>Defendants. | Case No. 2:20-cv-07467-AFM<br><br>**DECLARATION OF HUA JUN IN SUPPORT OF PLAINTIFF'S DAMAGES PROVE UP IN SUPPORT OF DEFAULT JUDGMENT** |

I, Hua Jun, declares as follows:

1. I make this declaration on my own personal knowledge and, if called and sworn as a witness, I could and would testify competently hereto.

2. I am an authorized agent for Plaintiff Shanghai Xuanni Technology Co., Ltd. ("SXT") in connection with its exports and sales to outside parties in the United States. I make this declaration in support of the Court's request for SXT to prove up its damages following the Court's entry of default against the defendants in this case.

3. Plaintiff SXT is a trading company that sells raw fabric and textile goods to companies abroad and in the United States.

4. In July 2019, SXT received purchase orders from City Pocket Los Angeles, Inc. ("City Pocket"), NER Precious Metals Inc. ("NER") and B&F Fedelini Inc. ("B&F") with request to purchase knitted fabrics.

5. SXT's practice upon receipt of a purchase order was to generate a proforma invoice that estimated the amount of goods that would be shipped and the price based on the unit cost of the fabric and the estimated weight. The actual amount for the goods would be based on the actual weight that was packed and shipped. Around this time, SXT requested each of the companies' owners to send corporate information about their respective entities' history to satisfy SXT that they were legitimate businesses and could be trusted. Each of the companies' principals that are personally named in this lawsuit responded and provided information on their respective companies and vouched for their company's legitimacy. Moreover, SXT requested each company to pay a deposit.

6. The goods that each company ordered were shipped and received by the companies without rejection, and at the time, the companies signed inspection certificates regarding their receipt of the goods. None of the companies indicated to SXT that they would not be paying for the goods as the invoices came due.

- 1 -

7. Attached as Exhibit A is a chart I created for this case to show the totals due from each of these companies after accounting for their deposits. I reviewed a variety of underlying documentation in verifying these sums, and I discovered some very minor variations between these sums and the sums demanded in the lawsuit that SXT filed, and so I correct those amounts here.

8. In some instances, SXT was not able to locate all the commercial invoices that were sent to the buyers, but I was able to verify the amounts due using the proforma invoice we sent the buyer upon receipt of their purchase orders (which estimate to round numbers the weight of the fabric and the price) against the shipping records we maintained (which state the actual weight of the goods packed for shipment). In other instances I was also able to verify these weight totals against delivery records we received from the companies that offloaded the containers at the port and delivered them to the buyers.

9. For B&F I located the invoices that SXT issued and sent to B&F for the total sum due, which I attach as Exhibit B. On August 21, 2019, SXT shipped to B&F goods totaling $229,942.47. B&F paid a deposit of $45,988.50, leaving an unpaid balance of **$183,953.97** due as of November 21, 2019.

10. For NER, I reviewed delivery order documents (Exhibit C-1), signed inspection reports wherein NER verified receipt of certain shipments of fabric (Exhibit C-2), various deposit invoices (where SXT issued an invoice for the 10% deposit that NET was required to pay up front) (Exhibit C-3), certain final invoices (showing the total due, including the deposit) (Exhibit C-4) and finally, the packing lists (Exhibit C-5) that SXT used to prepare each shipping container, which details the type of fabric shipped and the weight, which along with the price per unit, also allows me to calculate the total amount due per container. Based on my review of these records, and confirmation from these sources, from August 14, 2019 through September 4, 2019, SXT shipped goods to NER totaling $1,168,630.13. NER paid a deposit of $118,824.01, leaving an unpaid balance of **$1,049,806.12** due as of

December 4, 2019.

11. For City Pocket, I reviewed delivery order documents (Exhibit D-1), signed inspection reports wherein City Pocket verified receipt of fabric (Exhibit D-2), and various deposit invoices (where SXT issued an invoice for the 15% deposit that City Pocket was required to pay) (Exhibit D-3) as well as certain final invoices (showing the total due, including the deposit) (Exhibit D-4). Based on my review of these records, and confirmation from these sources, from September 23, 2019 through October 7, 2019 SXT shipped to City Pocket goods totaling $1,049,764.44. City Pocket paid a deposit of $157,103.78, which leaves an unpaid balance of **$892,660.66** due as of January 7, 2020 (for the convenience of the Court, and based on SXT's practice of allowing customers 90 days to make payments, I have made the sums due as of 90 days following the last shipment date for purposes of calculating interest).

12. I am informed that SXT is entitled to prejudgment interest at the rate of 10%. SXT has calculated interest based on the invoices issued as follows:

    a. City Pocket's past payments due for $892,660.66 due is calculated as of January 7, 2020 and to this date (September 15, 2021), is $150,893.52 in interest (based on the rate of $244.56 per day multiplied by 617 days).

    b. NER's past payments due of $1,049,806.12 is calculated as of December 4, 2019 and to this date (September 15, 2021) is $187,240.62 in interest (based on the rate of $287.62 per day multiplied by 651 days).

    c. B&F's past payments due of $183,451.29 is calculated as of November 21, 2019 and to this date (September 15, 2021) is $33,372.64 in interest (based on the rate of $50.26 per day multiplied by 664 days).

13. Soon after each company received the goods it ordered, SXT followed up with each company to ask about the payments for the goods, including many requests that I personally made. Each of the buyer company's principals either ignored these inquiries or after weeks of delays would send emails to me and others

at SXT making vague excuses for failing to pay. These excuses ranged from claiming the goods needed to be re-sold to customers (and that those downstream customers were on 60-to-90 day payment terms) and promising to pay SXT when those downstream customers who bought the goods had paid for the goods. Some of the companies also claimed that governmental restrictions put in place here in California during COVID-19 prohibited them from seeking payment from their customers and thus, they could not secure funds to pay back SXT. I have since learned from our counsel that these representation about COVID-19 restrictions were false. An example of such a communication is attached as Exhibit E where Morad Matian admitted he owed the sums to SXT but made up excuses for not paying.

14. After extracting further payment delay from SXT through these excuses, the companies' principals continued to ignore SXT which is when we retained U.S. legal counsel to address these defaults. Not once did these companies or the owners, who were the parties who bought the goods and owed the money, ever reach out to SXT on their own to provide updates on the payments.

15. It is apparent to SXT from the buyer principals' behavior that they did not intend to pay for the goods when initially ordered, particularly given the principals told us that they would only have the funds to pay us after they sold the goods we shipped to them to others. The principals did not treat SXT in good faith and in our view, defrauded SXT and made false promises about their ability to pay.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed on September 17, 2021, in  Shang Hai  , The People's Republic of China.



_____
Hua Jun

- 4 -